UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

JACQUELINE AHUMADA, individually and on behalf of all others similarly situated,

Plaintiff,

v.

GIORGIO ARMANI CORPORATION, et al.,

Defendants.

Case No.: 24-cv-1175-RSH-DEB

**ORDER ON MOTION FOR CLASS CERTIFICATION**

[ECF Nos. 60, 66]

Before the Court is defendant Giorgio Armani Corporation's motion to strike and plaintiff Jacqueline Ahumada's motion for class certification. ECF Nos. 60, 66. Pursuant to Local Civil Rule 7.1(d)(1), the Court finds the motions presented appropriate for resolution without oral argument. For the reasons below, the Court denies Defendant's motion to strike and denies Plaintiff's motion for class certification.

## I. BACKGROUND

### A. Factual Background

The instant case is a putative wage and hour class action and California Private Attorneys General Act ("PAGA"), Cal. Lab. Code § 2699 *et seq*., representative action

filed against defendant Giorgio Armani Corporation.

***1. The Parties***

***a. Defendant Giorgio Armani Corporation***

Defendant Giorgio Armani Corporation is the U.S. subsidiary of the Italian fashion house, Giorgio Armani. ECF No. 100 at 8. According to the FAC, Defendant designs, manufactures, and distributes "fashion and lifestyle products." ECF No. 13 at ¶ 12. Defendant operates under several brands, including Giorgio Armani, Emporio Armani, Armani Exchange, Armani Outlet, and Armani Exchange Outlet. Declaration of Melissa Grant ("Grant Decl.," ECF No. 66-2), Ex. B at 76:3–20. During the putative class period, Defendant operated approximately 34 retail locations and employed more than 800 non-exempt employees in California. Declaration of Danielle Johansen ("Johansen Decl.," ECF No. 100-5) at ¶¶ 6–7. Defendant allegedly administers its workforce through centralized human resources and payroll departments at its New York City headquarters. ECF No. 13 at ¶¶ 12, 14.

***b. Plaintiff Jacqueline Ahumada***

Plaintiff Jacqueline Ahumada worked as an hourly, non-exempt Retail Sales Associate at Defendant's Armani Exchange Outlet store in San Ysidro, California. *Id.* at ¶ 5; Johansen Decl. at ¶ 14. Her employment lasted from approximately March or May through August 2023. *Id.*; Johansen Decl. at ¶ 14. During her employment, Ahumada typically worked seven or more hours per day, five days per week. ECF No. 13 ¶ 5. Her primary job duties included cashiering, assisting customers, making sales, restocking inventory, maintaining customer relationships, and communicating sales and promotions to customers via text message. *Id.* Plaintiff alleges that during her employment, Defendant maintained several employment practices that violated California wage-and-hour law, including practices concerning off-the-clock compensation, non-compliant meal periods, and unreimbursed business expenses.

**B. Procedural Background**

On May 31, 2024, Plaintiff commenced this action against Defendant in the

Superior Court of California for the County of San Diego. *See* ECF No. 1-2. On July 8, 2024, Defendant removed the action to this Court under the Class Action Fairness Act ("CAFA") and filed an answer. ECF Nos. 1, 2.

On August 28, 2024, Plaintiff filed a FAC, the operative pleading in this case. ECF No. 13. The FAC asserts eleven causes of action for: (1) unpaid overtime in violation of California Labor Code sections 510 and 1198; (2) unpaid minimum wages in violation of Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198; (3) failure to provide meal periods in violation of Labor Code sections 226.7, 512(a), 516, and 1198; (4) failure to authorize and permit rest periods in violation of Labor Code sections 226.7, 516, and 1198; (5) noncompliant wage statements and failure to maintain accurate payroll records in violation of Labor Code sections 226(a), 1174(d), and 1198; (6) failure to timely pay wages upon termination in violation of Labor Code sections 201 and 202; (7) failure to timely pay wages during employment in violation of Labor Code section 204; (8) failure to reimburse business expenses in violation of Labor Code section 2802; (9) civil penalties under PAGA, Labor Code sections 2698 *et seq.*; (10) unlawful business practices in violation of California Business and Professions Code sections 17200 *et seq.*; and (11) unfair business practices in violation of Business and Professions Code sections 17200 *et seq. Id.* ¶¶ 53–146. Defendant filed an Answer to the FAC on October 11, 2024. ECF No. 19.

On November 13, 2025, Plaintiff filed the instant motion for class certification. ECF No. 66.[1] Defendant filed a response and Plaintiff filed a reply. ECF Nos. 100, 106.

### C. *Proposed Classes*

Plaintiff seeks certification of three classes of non-exempt, hourly employees who worked for Defendant in California from May 31, 2020 through the date of the class-

---

[1] Plaintiff originally filed her motion for class certification on November 3, 2025, but later withdrew and refiled it to correct an inadvertent filing error. *See* ECF No. 54, 65.

certification order: (1) an Off-the-Clock Class; (2) a Meal Break Class; and (3) a Business Expense Class. *See* ECF No. 66-1 at 7–9. Plaintiff additionally seeks certification of three derivative subclasses. *Id.*

***1. Primary Classes***

Each of Plaintiff's primary classes corresponds to a category of alleged unlawful employment practice:

- The ***Off-the-Clock Class*** is based on allegedly uncompensated time employees spent waiting for and undergoing security checks, performing closing duties, servicing clients after hours, and waiting for another employee before leaving the store at closing. ECF No. 66-1 at 7–8. According to Plaintiff, these practices caused employees to work or remain under Defendant's control off-the-clock. *Id.*
- The ***Meal Break Class*** is based on Defendant's alleged practice of requiring employees to undergo mandatory security checks after clocking out but before exiting a store for a meal period. *Id.* at 8. Plaintiff contends this practice discouraged employees from leaving store premises or deprived them of a full meal break. *Id.*
- The ***Business Expense Class*** is directed to employees' alleged use of their personal cell phones. *Id.* at 9. Plaintiff alleges that Defendant's expectations as to customer service required employees to use their personal cell phones for work-related communications, but that Defendant failed to reimburse employees for the resulting expenses. *Id.*

***2. Derivative Proposed Subclasses***

Plaintiff also seeks certification of three derivative subclasses: (1) the Derivative Wage Statement Subclass; (2) the Derivative Waiting Time Subclass; and (3) the Derivative UCL Subclass:

- The ***Derivative Wage Statement*** and ***Derivative Waiting Time Subclasses*** consist of members of the Off-the-Clock and Meal Break Classes. *Id.* at 8.

  - The ***Derivative Wage Statement Subclass*** consists of members who received at least one wage statement between May 31, 2023 and the date of certification. *Id.* at 8. The subclass is premised on Plaintiff's allegation that, because of the underlying off-the-clock and meal-period violations, Defendant's wage statements did not accurately reflect the compensation owed to subclass members. *Id.*
  - The ***Derivative Waiting Time Subclass*** consists of members who worked for Defendant between May 31, 2021 and the date of certification, whose employment ended. It is based on allegations Defendant failed to pay these employees all wages due at the end of their employment. *Id.* at 8.
- The ***Derivative UCL Subclass*** encompasses all members of the proposed classes and subclasses and is based on Plaintiff's contention that the alleged violations underlying those classes and subclasses also constitute violations of California's Unfair Competition Law. *Id.* at 9.

## II. LEGAL STANDARD

"Federal Rule of Civil Procedure 23 governs the maintenance of class actions in federal court." *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1124 (9th Cir. 2017). The Rule "provides a procedural mechanism for a federal court to adjudicate claims of multiple parties at once, instead of in separate suits." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 663 (9th Cir. 2022) (internal quotation marks omitted).

Rule 23 "contains two distinct sets of requirements." *United Steel, Paper & Forestry, Rubber, Mfg. Energy v. ConocoPhillips Co.*, 593 F.3d 802, 806 (9th Cir. 2010). The first set, found in Rule 23(a), "outlines four requirements, all of which must be met for class certification: (1) the class must be so numerous that joinder of all members is impracticable; (2) there must be questions of law or fact common to the class; (3) the claims or defenses of the class representatives must be typical of the claims

or defenses of the class; and (4) the class representatives must fairly and adequately protect the interests of all members of the class." *Id*. (citing Fed. R. Civ. P. 23(a)). "The four requirements of Rule 23(a) are commonly referred to as 'numerosity' 'commonality,' 'typicality,' and 'adequacy of representation' (or just 'adequacy'), respectively." *Id.*

A putative class that "satisfies all four requirements of Rule 23(a)" must still "meet at least one of three additional requirements outlined in Rule 23(b) in order to be eligible for certification." *Id.* "Rule 23(b) requires a plaintiff to establish one of the following: (1) that there is a risk of substantial prejudice from separate actions, (2) that declaratory or injunctive relief benefitting the class as a whole would be appropriate, or (3) that common questions of law or fact predominate and the class action is superior to other available methods of adjudication." *Fogy v. BPREP Vantage Pointe LLC*, No. 25-CV-622 TWR (VET), 2026 WL 734891, at *8 (S.D. Cal. Mar. 16, 2026) (citing Fed. R. Civ. P. 23(b)(1)–(3)).

"A court, when asked to certify a class, is merely to decide a suitable method of adjudicating the case and should not turn class certification into a mini-trial on the merits." *Edwards v. First Am. Corp.*, 798 F.3d 1172, 1178 (9th Cir. 2015) (internal quotation marks omitted); *see Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974) ("In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met.") (internal quotation marks omitted). Nevertheless, "Rule 23 is more than a mere pleading standard; plaintiffs cannot plead their way to class certification through just allegations and assertions." *Small v. Allianz Life Ins. Co. of N. Am.*, 122 F.4th 1182, 1197 (9th Cir. 2024). "Instead, plaintiffs must actually prove—not simply plead—that their proposed class satisfies each requirement of Rule 23 by a preponderance of the evidence." *Id*. (internal quotation marks omitted). "Certification is then only appropriate if the district court is satisfied, after a rigorous analysis that Rule 23 is met." *Id.* (internal quotation marks omitted). "Frequently that

'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011). "Class certification is [] not to be granted lightly." *Black Lives Matter L.A. v. City of L.A.*, 113 F.4th 1249, 1258 (9th Cir. 2024).

## III. ANALYSIS

### A. Request for Judicial Notice

Defendant requests that the Court take judicial notice of an order denying class certification in *Andres Lopez v. Giorgmi Armani* Corporation, filed in Los Angeles Superior Court, Central District, Case No. BC717329. *See* ECF No. 100-2 at 2. Plaintiff objects that this order is irrelevant and that the Court may not judicially notice facts subject to reasonable dispute. See ECF No. 106-3 at 2.

A court "may take judicial notice of undisputed matters of public record, including documents on file in federal or state courts." *Harris v. Cty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) (internal citation omitted); *see United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) ("[W]e may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue."). Nevertheless, "when a court takes judicial notice of another court's opinion, it may do so not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity." *Lee v. City of L.A.*, 250 F.3d 668, 690 (9th Cir. 2001) (internal quotation marks omitted).

Accordingly, the Court **GRANTS** Defendant's request and takes judicial notice of the existence of the *Lopez* order and its denial of class certification.

### B. Motion to Strike/Evidentiary Objections

Defendant moves to strike ten putative class member declarations and two expert declarations submitted by Plaintiff, arguing that Plaintiff failed to timely disclose the declarants under Rule 26. *See* ECF No. 60-2. Defendant separately moves, as part of its evidentiary objections, to strike the declaration of putative class member George Medina

for failure to appear at his noticed and later court-ordered deposition. *See* ECF No. 100-3 at 8–10. Plaintiff objects to 55 putative class member declarations submitted by Defendant contending they are "unsworn declarations" that do not meet the requirements of 28 U.S.C. § 1746. *See* ECF Nos. 106-2. Plaintiff also asks the Court to discount Defendant's putative class member declarations as having been procured under "coercive circumstances." *See* ECF No. 106 at 6–7. Both Parties also raise Rule 702 challenges to the opposing experts' declarations. *See* ECF Nos. 100-3 at 144–53, 155–70; 106-4; 107; 108. Finally, both Parties raise multiple objections to declarations submitted by the opposing party for vagueness, lack of foundation, hearsay, lack of personal knowledge, and relevance. *See* ECF Nos. 100-3, 106-2, 106-4, 107, 108. The Court addresses these evidentiary disputes, in turn, below.

***1. Putative Class Member Declarations***

***a. Defendant's Objections***

***i. Rule 26***

Defendant moves to strike ten putative class member declarations and two expert declarations contending Plaintiff failed to timely to identify these declarants in her Rule 26 disclosures. *See* ECF No. 60-2 at 11–12.

Federal Rule of Civil Procedure 26 provides, in relevant part:

> Except as exempted by Rule 26(a)(1)(B) or as otherwise stipulated or ordered by the court, a party must, without awaiting a discovery request, provide to the other parties:
>
> (i) the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment;

Fed R. Civ. P. 26(a)(1)(A)(i). "When a party fails to disclose information required by Rule 26, Rule 37(c)(1) provides that the improperly withheld information should be excluded, unless the failure to disclose is 'substantially justified or harmless.'" *Ingenco*

*Holdings, Ltd. Liab. Co. v. ACE Am. Ins. Co.,* 921 F.3d 803, 821 (9th Cir. 2019).

Here, even assuming Plaintiff failed to comply with Rule 26 as to any challenged declarant, any such failure was harmless. In its Motion to Strike, Defendant argued that the briefing schedule then in effect would prejudice its ability to oppose class certification because Defendant had insufficient time to depose Plaintiff's declarants, retain a rebuttal expert, and obtain declarations from other putative class members before its opposition was due. *See* ECF No. 60-2 at 8–9. The Court subsequently continued the briefing schedule twice. *See* ECF Nos. 74, 77. During this period, Defendant deposed nine of the ten putative class member declarants and both experts, retained a rebuttal expert, and obtained declarations from other putative class members. *See* ECF Nos. 100, 100-3, 100-4, 100-7. Defendant was therefore afforded a meaningful opportunity to address Plaintiff's challenged declarations before filing its opposition. Accordingly, the Court **DENIES** Defendant's request to strike these declarations under Rule 37(c)(1).

***ii. Declaration of George Medina***

Defendant moves to strike the declaration of putative class member George Medina for failure to appear at his December 18, 2025 deposition and court-ordered April 1, 2026 deposition. *See* 100-3 at 5–10. Plaintiff does not dispute Mr. Medina's nonappearance. *See* ECF No. 106-5. Because Defendant had no opportunity to examine Mr. Medina regarding his declaration, and no meaningful opposition is offered, the Court **GRANTS** Defendant's request and **STRIKES** Mr. Medina's declaration. *See Aldapa v. Fowler Packing Co. Inc.*, No. 115CV00420DADSAB, 2021 WL 2551000, at *15 (E.D. Cal. June 22, 2021) ("The Court finds that precluding the absent class member declarations from being used in this litigation is the minimum sanction that could be imposed to coerce the declarants to appear for deposition and strikes an appropriate balance between Defendants' concerns regarding the use of the untested declarations and the willful defiance of this Court's orders."); *Evans v. IAC/Interactive Corp.,* 244 F.R.D.

568, 571 (C.D. Cal. 2007) (striking declarations of witnesses whom the plaintiffs failed to produce for court-ordered depositions).

***b. Plaintiff's Objections***

***i. "Unsworn" Declarations***

Plaintiff objects to 55 putative class member declarations submitted by Defendant, arguing that the declarations—executed in 2021 under penalty of perjury under California law—do not comply with 28 U.S.C. § 1746. *See* ECF No. 106-2.

Under 28 U.S.C. § 1746:

> Wherever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same (other than a deposition, or an oath of office, or an oath required to be taken before a specified official other than a notary public), such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form:
>
> …
>
> (2) If executed within the United States, its territories, possessions, or commonwealths: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date).
>
> (Signature)".

"[Section] 1746 requires only that the declaration 'substantially' comply with the statute's suggested language[.]" *CFTC v. Topworth Int'l, Ltd.*, 205 F.3d 1107, 1112 (9th Cir. 1999). Here, each of the challenged putative class member declarations concludes with the following attestation:

> I hereby declare that the above statement is true to the best of my knowledge and belief, and that I understand it is made for use as evidence in court and is subject to penalty for perjury under the laws

of the State of California.

*See e.g.*, ECF No. 100-4 at 116. Because the challenged declarations include a representation as to the truthfulness of their contents and are expressly made under penalty of perjury, they substantially comply with § 1746.

The Court therefore **OVERRULES** Plaintiff's objection. *See Schroeder v. McDonald*, 55 F.3d 454, 460 n.10 (9th Cir. 1995) ("Although [plaintiff] did not follow § 1746's form with precision, [plaintiff] did verify his complaint because he stated under penalty of perjury that the contents were true and correct."); *Agro Dynamics, LLC v. United States*, No. 20-cv-02082-JAH-KSC, 2025 WL 934454, at *3 (S.D. Cal. Mar. 27, 2025) ("Because the declaration includes the language 'under penalty of perjury' and a representation that the statements therein are true, the declaration complies with the verification requirements of 28 U.S.C. § 1746."); *Basie & Fritz v. Houston*, No. CIV. 06CV1087WQHJMA, 2007 WL 2226003, at *2 (S.D. Cal. July 31, 2007) ("The language in Defendant's declarations is substantially similar to the language suggested by 28 U.S.C. § 1746. This is all that is required for compliance with § 1746").

***c. Declarations Obtained Under "Coercive" Circumstances***

Plaintiff next requests that the Court disregard Defendant's putative class member declarations because they were "procured under coercive circumstances with vague disclosures." ECF No. 106 at 6. Specifically, Plaintiff contends that the Notice of Interview given to employees who provided a declaration did not state in "direct, plain terms" that the employees' interests could be adverse to Defendant's. *Id.* at 7.

The record does not support discounting the declarations on this basis. Here, Defendant's Notice identified the instant putative class action, summarized Plaintiff's allegations, and advised each employee that the employee was a potential class member. *See* Supplemental Declaration of Melissa Grant ("Suppl. Grant Decl.," ECF No. 106-8), Ex. Y. It further warned that providing information "could adversely impact [the employee's] ability to recover monetary relief" and disclosed that Defendant would use the information to defend against the lawsuit. *Id.* The Notice advised employees that

participation in the interview was voluntary, that employees could decline to answer questions or end the interview at any time, and that neither participation nor refusal would result in any benefit, adverse action, or retaliation. *Id.*

Taken together, these disclosures conveyed in plain terms the purpose and potential consequences of the interviews. The Court therefore declines to discount Defendant's declarations on this basis. *See Delbridge v. Kmart Corp.,* No. C 11-02575 WHA, 2013 WL 2605513, at *5 (N.D. Cal. June 11, 2013) (declining to strike declarations from currently-employed cashiers where there was no evidence that defendant's "method of gathering and preparing" them was "fundamentally coercive or misleading"); *Maddock v. KB Homes, Inc.*, 248 F.R.D. 229, 237 (C.D. Cal. 2007) ("The mere fact that defendant communicated with its class members regarding the instant suit and requested that current employees file truthful declarations, absent any evidence that the communications were misleading or coercive, is insufficient to warrant striking the declarations.").

***2. Expert Declarations***

In support of her motion for class certification, Plaintiff submits the declarations and supplemental declarations of two experts: Amanda L. Scott and Eric R. Lietzow. ECF Nos. 66-4; 66-5; 106-6; 106-7. Defendant, in opposition, submits a declaration from its expert, Robert W. Crandall. ECF No. 100-7. Both Parties raise Rule 702 challenges to the opposing Party's expert declarations. *See* ECF Nos. 100-3 at 144–53, 155–170; 106-4; 107; 108.

Here, the Court need not resolve these challenges because its Rule 23 analysis does not depend on whether the challenged opinions are admissible. Accordingly, the Court declines to rule on the Parties' Rule 702 challenges at this stage of the proceedings. *See Turner v. Apple, Inc.*, No. 5:20-CV-07495-EJD, 2025 WL 1953697, at *5 (N.D. Cal. July 16, 2025) ("None of the testimony that either party sought to exclude bears on the Court's reasoning for denying class certification. Since courts should consider *Daubert* issues only to the extent necessary to decide class certification, it is

prudent for the Court to avoid opining unnecessarily on *Daubert* now.") (internal quotation marks omitted); *Rodriguez v. URS Midwest, Inc.*, No. 5:20-CV-02365-JWH-SP, 2023 WL 6373877, at *3 (C.D. Cal. Aug. 15, 2023) (deferring *Daubert* challenge to proposed survey expert); *Milan v. Clif Bar & Co.*, 340 F.R.D. 591, 602 (N.D. Cal. 2021) ("The Court did not rely on any opinions or materials presented by the witnesses challenged in these motions, and so these Rule 702 and *Daubert* issues need not be resolved for the class certification decision.").

***3. Other Evidentiary Objections***

Finally, both Parties filed numerous evidentiary objections to declarations submitted by the opposing party on grounds including vagueness, lack of foundation, hearsay, lack of personal knowledge, and relevance. *See* 100-3; 106-2; 106-4; 107; 108.

These objections do not warrant exclusion of these declarations at the class certification stage. "[A] district court is not limited to considering only admissible evidence in evaluating whether Rule 23's requirements are met." *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1005 (9th Cir. 2018); *see also Sunderland v. PharmaCare U.S., Inc.*, No. 3:23-cv-01318-JES-AHG, 2025 WL 2638529, at *4 (S.D. Cal. Sept. 12, 2025) ("In determining whether class certification is appropriate under FRCP 23, courts may consider all material evidence submitted by the parties . . . and need not address the ultimate admissibility of evidence proffered by the parties."); *Testone v. Barlean's Organic Oils, LLC*, No. 19-CV-169 JLS (BGS), 2021 WL 4438391, at *3 (S.D. Cal. Sept. 28, 2021) ("Since a motion to certify a class is a preliminary procedure, courts do not require strict adherence to the Federal Rules of Civil Procedure or the Federal Rules of Evidence."); *McCurley v. Royal Seas Cruises, Inc.*, 331 F.R.D. 142, 154 (S.D. Cal. 2019) ("Formalistic evidentiary objections which might have merit at a successive stage of the litigation, such as a motion for summary judgment or trial, make little sense at the class certification stage.").

Accordingly, the Court **DECLINES** to individually rule on each objection. Instead, the Court considers the challenged evidence to the extent it bears on the Rule 23

analysis and accords it the weight warranted by any admissibility concerns. *See Sali,* 909 F.3d at 1006 ("[A]n inquiry into the evidence's ultimate admissibility should go to the weight that evidence is given at the class certification stage.").

**C. Class Certification**

As set forth above, Plaintiff seeks certification of three classes and three derivative subclasses pursuant to Rule 23(b)(3). ECF No. 66-1 at 7–9. Defendant opposes certification, arguing that Plaintiff cannot establish commonality under Rule 23(a)(2) and that individualized issues preclude findings of predominance and superiority under Rule 23(b)(3). ECF No. 100 at 20–31. The Court considers this argument below.

***1. Commonality under Rule 23(a)(2) and Rule 23(b)(3) Predominance***

The Parties' Rule 23 briefing focuses principally on commonality and predominance. Because those inquiries substantially overlap and the Parties address them together, the Court also considers them together. *See Just Film, Inc. v. Buono*, 847 F.3d 1108, 1120–22 (9th Cir. 2017) (analyzing commonality and predominance together); *Ingraham v. Cap. One Fin. Corp.*, No. 24-CV-05985-TLT, 2026 WL 1759155, at *5 (N.D. Cal. June 16, 2026) ("Courts have found it appropriate to assess Rule 23(a)(2) commonality and Rule 23(b)(3) predominance together.") (collecting cases); *Montgomery v. Target Corp.*, No. CV 19-4924 JGB (MRWX), 2026 WL 1048204, at *7 (C.D. Cal. Feb. 19, 2026) ("[B]ecause the parties contest commonality and predominance together, the Court considers these two issues jointly."); *Gibbs v. TWC Admin., LLC*, No. 17-CV-1513 DMS (AGS), 2020 WL 42770, at *3 (S.D. Cal. Jan. 3, 2020) ("In the interest of efficiency, commonality under Rule 23(a) is considered together with predominance under Rule 23(b)(3).").

***a. Commonality***

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "All questions of fact and law need not be common to satisfy the rule." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).

Instead, "[a]lthough Rule 23(a)(2) refers to common 'questions of law or fact' in the plural, even a single common question will do." *Alcantar v. Hobart Serv.*, 800 F.3d 1047, 1052 (9th Cir. 2015). To meet the commonality requirement, "a party must demonstrate that they and the proposed class members have suffered the same injury and have claims that depend on a common contention capable of class-wide resolution." *Willis v. City of Seattle*, 943 F.3d 882, 885 (9th Cir. 2019). "Thus, it is not just the common contention, but the answer to that contention, that is important: What matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Alcantar*, 800 F.3d at 1052.

***b. Predominance***

"The predominance analysis under Rule 23(b)(3) focuses on 'the relationship between the common and individual issues' in the case and 'tests whether [the] proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 545 (9th Cir. 2013) (quoting *Hanlon*, 150 F.3d at 1022). "An individual question is one where 'members of a proposed class will need to present evidence that varies from member to member,' while a common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.'" *Lara v. First Nat'l Ins. Co. of Am.*, 25 F.4th 1134, 1138 (9th Cir. 2022) (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016)). "The predominance inquiry 'asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'" *Id.* (quoting *Tyson Foods,* 577 U.S. at 453). "Implicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy." *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1189 (9th Cir. 2001).

Rule 23(b)(3)'s predominance requirement is "more demanding" than Rule 23(a)'s commonality requirement. *See Comcast Corp. v. Behrend,* 569 U.S. 27, 34

(2013); *see also Amchem Prods. v. Windsor*, 521 U.S. 591, 609 (1997) ("Rule 23(a)(2)'s 'commonality' requirement is subsumed under, or superseded by, the more stringent Rule 23(b)(3) requirement that questions common to the class 'predominate over' other questions."); *Hanlon*, 150 F.3d at 1019 (noting that the commonality requirement of Rule 23(a)(2) is "less rigorous than the companion [predominance] requirements of Rule 23(b)(3)").

### *c. Off-the-Clock Class*

The Court first addresses Plaintiff's proposed Off-the-Clock Class. The principal theory underlying Plaintiff's off-the-clock claim is that Defendant's "profit-maximizing policies" created an environment in which employees were discouraged from recording time worked "beyond their scheduled shift or from recording overtime without prior approval." ECF No. 106 at 7–8.

Defendant responds that the proposed Off-the-Clock Class fails to satisfy Rule 23(a)(2)'s commonality and Rule 23(b)(3)'s predominance requirements because: (1) the claim rests on several distinct theories of liability; and (2) absent a uniform unlawful policy or practice, proving liability would require individualized inquiries into whether each employee performed off-the-clock work, for how long, and whether Defendant knew or should have known of that work. *See* ECF No. 100 at 21–25.

#### *i. Elements*

The Court "begins with the elements of the underlying cause of action." *DZ Rsrv. v. Meta Platforms, Inc.*, 96 F.4th 1223, 1245 (9th Cir. 2024) (internal quotation marks omitted). Under California law, "[e]very employer shall pay to each employee . . . not less than the applicable minimum wage for all hours worked in the payroll period." Cal. Code Regs. tit. 8, § 11070. "'Hours worked' is defined as 'the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so." *Frlekin v. Apple Inc.*, 8 Cal. 5th 1038, 1042 (2020). An employer exercises control over an employee whenever it "directs, commands or restrains an employee." *Id.* at 1047.

"[A] plaintiff may establish liability for an off-the-clock claim by proving that (1) he performed work for which he did not receive compensation; (2) that defendants knew or should have known that plaintiff did so; but that (3) the defendants stood idly by." *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014).

***ii. Policies***

The Court next examines Defendant's written timekeeping policies. Defendant maintains written employment policies applicable across its California operations. These policies are set forth in its 2015 and 2024 Associate Handbooks, with California-specific policies contained in a 2015 California Addendum and 2024 California Supplement. Johansen Decl. at ¶¶ 17–22. As part of its onboarding process, Defendant provides new employees with its then-current handbook and California addendum and requests that they sign an acknowledgment of receipt. ¶¶ 23–24. Managers are expected to review these materials with new hires. *Id.* The materials, along with other store policies and procedures, are available on Defendant's intranet and employees can request copies at any time. *Id.* ¶ 24.

Here, Defendants points to the Timekeeping Policy contained in both its 2015 and 2024 Associate Handbooks, which requires employees to record, for each workday, the times they "(1) commence work, (2) leave and return from lunch and/or dinner breaks, and (3) complete work." Johansen Decl., Ex. A at 6, Ex. B at 30. Employees were expected to report any off-the-clock work to a manager so that their time records could be adjusted. Johansen Decl. ¶ 26.

The Parties do not dispute that Defendant also maintained a loss-prevention policy requiring employees leaving the store with bags or other items to submit them for inspection. Johansen Decl. ¶ 31; Grant Decl., Ex. B at 180:3–10. The existence of a bag-check policy, however, does not itself establish that the screenings were performed off the clock. Indeed, the 2024 Handbook provides:

> All time spent performing required pre-shift or post-shift tasks on-site for security or safety measures are compensable and associates

> should not clock out until after they have cleared appropriate security and screening checks, and should clock in before completing appropriate security and screening checks at the start of the shift.
>
> Unless an associate is authorized by a supervisor, associates should not work any hours that are beyond their scheduled shift. Associates should not start work early, finish work late, work during a meal break or perform any other extra work unless they are authorized to do so. Associates are prohibited from performing any "off-the-clock" work. "Off-the-clock" work means work an associate performs but fails to record in the timekeeping system. **ASSOCIATES ARE REQUIRED TO ACCURATELY REPORT ALL HOURS WORKED.**

Johansen Decl.. Ex. B at 30. The 2015 Handbook does not, however, contain a comparable provision. *See* Johansen Decl., Ex. A.

Defendant also points to a PowerPoint presentation used from approximately 2023 through early 2025, with nearly identical language:

> All time spent performing required pre-shift or post-shift tasks on-site for security or safety measures are compensable and associates should not clock out until after they have cleared appropriate security and screening checks and should clock in before completing appropriate security and screening checks at the start of the shift.

*Id.* ¶ 25, Ex. E at GAC 000614.

Finally, Defendant relies on an Armani Exchange policy titled "Bag Inspections," bearing an update date of February 2015, which instructed that employees should:

> Clock out on the register only after the bag inspection has been completed and the employee is ready to exit the building. If it is a closing shift and all employees are exiting the building, ensure all employees have been inspected before anyone clocks out.

*Id.* ¶ 33, Ex. H. The document, however, is specific to Armani Exchange and the record does not clearly establish when it was utilized. Suppl. Grant Decl., Ex. Z at 249:1–250:6.

///

///

Taken at face value, these materials identify Defendant's stated timekeeping requirements: employees were to record all time worked and, at least during the periods and at the locations covered by the materials addressing security screenings, remain clocked in until those screenings were completed. *See Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1051 (2012) (holding certification of off-the-clock class was properly rejected partly because "[t]he only formal [] off-the-clock policy submitted disavow[ed] such work, consistent with state law").

***iii. Other Evidence***

The facially compliant nature of Defendant's policies, however, "does not end the inquiry." *Jimenez v. Allstate Ins. Co.*, No. LA CV10-08486 JAK, 2012 WL 1366052, at *8 (C.D. Cal. Apr. 18, 2012), *aff'd*, 765 F.3d 1161 (9th Cir. 2014); *see Miles v. Kirkland's Stores Inc.*, 89 F.4th 1217, 1222 (9th Cir. 2024) (holding that in a wage and hour case, "an employer's official policies are relevant to the Rule 23(b)(3) analysis, but a district court abuses its discretion by rely[ing] on such policies to the near exclusion of other relevant factors touching on predominance") (internal quotation marks omitted); *Campbell v. Vitran Express Inc*, No. CV 11–5029 RGK (SHX), 2015 WL 7176110, at *8 (C.D. Cal. Nov. 12, 2015) ("A formal policy, however, will not save an employer in the face of allegations that a contrary and uniform company policy exists.").

The Court therefore considers whether Plaintiff has identified common evidence capable of resolving her off-the-clock theory on a classwide basis. Here, Plaintiff points only to broad categories of evidence—the "testimony of Defendant's corporate representatives, Defendant's own policy and training documents, Plaintiff's and other percipient witnesses' testimony, and a survey designed [by] a survey research expert." *See* ECF No. 66-1 at 18. Plaintiff does not, however, identify the particular evidence within those categories or explain how it would generate a common answer to whether class members performed uncompensated work and whether Defendant knew or should have known of that work. Likewise, Plaintiff's characterization of several distinct

practices as "profit-maximizing policies" does not explain how those practices present a common issue capable of classwide resolution.

Based on its review of the record, the Court instead understands Plaintiff to rely principally on her declaration and deposition testimony, together with declarations from nine former employees who held sales, stock, supervisory, and managerial roles at Armani stores throughout California, including locations in Livermore, Cerritos, Beverly Hills, Sacramento, and San Diego spanning from February 2008 through October 2023.[2] Plaintiff and the nine former employees describe several overlapping forms of alleged off-the-clock work, including waiting for stores to open, communicating with clients after hours, waiting after clocking out for coworkers or managers to complete closing duties, and undergoing security bag checks after clocking out. *See e.g.*, ECF No. 66-6, Ex. 2 at ¶ 26 ("Approximately once per week, I worked off-the-clock 5–10 minutes after my shift because I had to complete a closing task before leaving the store."); Ex. 4 at ¶ 11 ("I was not paid for the hours that I worked off-the-clock . . . . Every day, after I clocked out but before I could leave for my meal break and at the end of my shift, I was required to wait for a security bag check before I could leave. This was because of Giorgio Armani's security and loss prevention policy. I was not able to stay clocked-in for these bag checks because I was instructed to clock out by my supervisor."); Ex. 7 at ¶ 21 ("I sometimes was required to work before clocking in for the start of my shift to attend to customers or additional work duties of another employee, but before I was clocked in. I was unable to clock in for this time because employees were restricted from accruing unauthorized overtime. I also was required to continue working after clocking out at the end of my scheduled shift, sometimes because a customer had stayed past the store's operating hours, which delayed all other closing tasks like organizing and cleaning the store before being able to leave for the day.").

---

[2] Because the Court has stricken George Medina's declaration, it does not consider the declaration in its Rule 23 analysis.

In response, Defendant submits sixty-four putative class member declarations—fifty-five executed in November 2021 and nine executed in November 2025—from employees whose periods of employment collectively span from 2005 through 2025 at stores throughout California, including locations in Beverly Hills, Costa Mesa, Commerce, Livermore, San Diego, and Sacramento. *See* ECF No. 100-4. The declarants generally state that they recorded all time worked and received overtime pay when they remained clocked in beyond the end of their scheduled shifts. *See e.g.*, *id.*, Ex. 1 at ¶ 10 ("I have never performed work during a shift before I have punched in or after I have punched out."); Ex. 16 at ¶ 13 ("I have never conducted work in a shift before I have 'punched in' or after I have 'punched out.'"); Ex. 20 at ¶ 9 (same); Ex. 57 at ¶ 7 (same). Most declarants state that bag inspections occurred before they clocked out; some state that, when they clocked out beforehand, they reported the time to a manager for correction. *See e.g.*, *id.*, Ex. 1 at ¶ 17 ("I have never punched out before the bag inspection has been completed or before I am ready to exit the store."); Ex. 16 at ¶ 47 ("I have sometimes 'punched out' before the bag inspection has been completed. But when I have, I informed my manager I had done so."); Ex. 20 at ¶ 41 ("I have never been instructed, pressured or encouraged to 'punch out' before a bag inspection occurs."); Ex 58 at ¶ 42 ("I understand that I am required to 'punch out' after—not before—the bag inspection has been completed and I am ready to exit the store.").

Even fully crediting Plaintiff's declarations, the record does not show that the proposed class's off-the-clock claims can be resolved through common proof. Considered together, the written policies and competing employee declarations instead reflect materially different practices and experiences. Plaintiff's own declarants attribute alleged off-the-clock work to different activities, including opening and closing duties, after-hours client communications, waiting for coworkers or managers, and post-clock-out security screenings. Thus, for each class member, the Court would first need to determine which, if any, alleged practice resulted in off-the-clock work, and then determine the frequency and duration of that work and whether Defendant knew or

should have known it occurred. These questions would require the Court to "inquire into the individual practices of each store, manager, and employee—something that would not allow a court to resolve the issue in 'one stroke.'" *Miles*, 89 F.4th at 1225; *see Garcia v. Sun Pac. Farming Co-op, Inc.*, 359 F. App'x 724, 726 (9th Cir. 2009) (affirming denial of class certification where conflicting employee declarations showed that wage-and-hour practices varied among employee crews); *Chavez v. AmeriGas Propane, Inc.*, No. CV1305813MMMMANX, 2015 WL 12859721, at *21 (C.D. Cal. Feb. 11, 2015) ("[B]ecause of often conflicting testimony as to whether employees were required to work off-the-clock . . . courts regularly find that off-the-clock claims . . . lack the commonality necessary for class certification."); *Braun v. Safeco Ins. Co. of Am.*, No. CV 13-00607 BRO (PLAx), 2014 WL 9883831, at *14 (C.D. Cal. Nov. 7, 2014) ("Because an employer's liability hinges on whether employees actually worked off-the-clock, overtime claims often present individualized inquiries."); *In re AutoZone, Inc., Wage & Hour Emp. Pracs. Litig.*, 289 F.R.D. 526, 539 (N.D. Cal. 2012), *aff'd*, 789 F. App'x 9 (9th Cir. 2019) (declining to certify class where there was a "uniform policy prohibiting off-the-clock work" and defendant submitted over a hundred "putative class member declarations attesting to never having performed or reported any off-the-clock work" thereby undermining the notion that defendant "knew or should have known that off-the-clock work was occurring"); *see also Brinker,* 53 Cal. 4th at 1052 (denying class certification where "trial court was presented with anecdotal evidence of a handful of individual instances in which employees worked off-the-clock, with or without knowledge or awareness by [] supervisors").

To address the concern as to individualized inquiries identified above, Plaintiff proposes surveying putative class members to estimate the incidence and duration of alleged off-the-clock work. *See* Declaration of Amanda Scott ("Scott Decl.," ECF No. 66-5) ¶¶ 30–48, 83. Even assuming the proposed survey is reliable, it would at most aggregate employees' individualized accounts of whether, when, and under what circumstances they performed off-the-clock work. Plaintiff has not sufficiently explained

how this approach, without more, would resolve the individualized inquiries problem identified above. *See Galvan v. First Student Mgmt.*, LLC, No. 18-cv-07378-JST, 2025 U.S. Dist. LEXIS 207565, at *7 (N.D. Cal. Oct. 21, 2025) ("The proposed use of survey data does not allay the Court's concerns about the lack of evidence supporting the existence of a common, unofficial policy underlying Defendants' wage and hour practices.") (internal quotation marks and citation omitted); *Sanchez v. Sams W., Inc.*, No. 2:21-CV-05122-SVW-JC, 2024 WL 4131957, at *8 (C.D. Cal. Sept. 10, 2024) ("Plaintiff cannot use representative evidence as a means overcoming [the] absence of a common policy.") (internal quotation marks omitted); *see also Duran v. U.S. Bank Nat'l Ass' n*, 59 Cal. 4th 1, 31 (2014) ("Statistical methods cannot entirely substitute for common proof . . . . There must be some glue that binds class members together apart from statistical evidence. While sampling may furnish indications of an employer's centralized practices, no court has deemed a mere proposal for statistical sampling to be an adequate evidentiary *substitute* for demonstrating the requisite commonality, or suggested that statistical sampling may be used to manufacture predominate common issues where the factual record indicates none exist.") (internal quotation marks and citations omitted).

In sum, Plaintiff bears the burden of demonstrating that the proposed Off-the-Clock Class satisfies Rule 23. Plaintiff has not carried that burden. Her generalized references to "profit-maximizing policies" and to broad categories of evidence do not explain how Defendant's liability could be established through common proof. The Court therefore **DENIES** certification of the proposed Off-the-Clock Class.

***d. Meal Break Class***

The Court turns next to Plaintiff's proposed Meal Break Class. The proposed Meal Break Class rests on Plaintiff's contention that employees were required to undergo security screenings—primarily bag inspections—after clocking out for meal periods but before leaving the store. *See* ECF Nos. 66-1 at 8; 106 at 9–10. Defendant responds that the Meal Break Class is derivative of the Off-the-Clock Class and fails to

satisfy commonality and predominance because bag-inspection practices varied among employees and numerous putative class members attested that they received compliant meal periods. ECF No. 100 at 26–28.

***i. Elements***

"California requires non-exempt employees be afforded . . . meal periods after working a certain number of hours." *Rodriguez v. Taco Bell Corp.*, 896 F.3d 952, 956 (9th Cir. 2018); *see Cal. ex rel. Becerra v. Fed. Motor Carrier Safety Admin.*, 177 F.4th 1032, 1035–36 (9th Cir. 2026) ("The California Labor Code generally prohibits employers from requiring employees to work during a mandatory 'meal or rest . . . period mandated pursuant to an applicable statute, or applicable regulation, standard, or order of the Industrial Welfare Commission.'") (quoting Cal. Lab. Code § 226.7(b)).

Section 512 of the California Labor Code provides that "[a]n employer shall not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes[.]" Cal. Lab. Code § 512(a). Section 512 further requires that "[a]n employer shall not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes[.]" *Id.*; *see also Mauia v. Petrochem Insulation, Inc.*, 5 F.4th 1068, 1070 (9th Cir. 2021).

An employer satisfies its duty with respect to meal breaks "if it relieves its employees of all duty, relinquishes control over their activities and permits them a reasonable opportunity to take an uninterrupted 30-minute break, and does not impede or discourage them from doing so." *Brinker*, 53 Cal. 4th at 1040. "On the other hand, the employer is not obligated to police meal breaks and ensure no work thereafter is performed." *Id.* at 1040–41.

///

///

///

///

### *ii. Policies*

The Court next examines Defendant's written meal break policies. Defendant's 2015 California Addendum provides:

> Associates who work more than five hours in any workday are entitled to a 30-minute, off-duty meal period. Associates who work more than 10 hours in any workday are entitled to a second 30-minute, off-duty meal period.

Johansen Decl., Ex. C at GAC000023.

The 2024 California Supplement similarly provides:

> Associates who work more than five (5) hours in a workday are provided a unpaid, off-duty and uninterrupted meal period of at least thirty (30) minutes . . . . Associates who work more than ten (10) hours in a day are entitled to a second unpaid, off-duty and uninterrupted 30-minute meal period.

Johansen Decl., Ex. D at 3.

The 2024 Supplement further states associates "who use a time clock must clock out for their meal periods" and provides:

> Associates are completely relieved of all work duties and responsibilities during their rest breaks and meal periods. All rest breaks and meal periods must be taken outside associates' work areas, such as in a break room. Associates may leave the premises during rest breaks and meal periods. Associates should not visit or socialize with associates who are working while taking their rest break or meal period. Associates are not expected to remain "on call" or available to respond to messages, monitor radios, telephones, email or other devices during meal periods and rest breaks—even those who are in a sensitive position like security or information technology. Associates are required to notify Human Resources immediately if they believe they are being pressured or coerced by any manager, supervisor, or other associate to forego any portion of a provided rest break or meal period.

*Id.* at 3–4.

With respect to bag inspections before meal breaks, as discussed above, the Parties do not dispute that Defendant maintained a bag-inspection policy. Johansen Decl.

¶ 31; Grant Decl., Ex. B at 180:3–183:9. And as also discussed above, Defendant's written materials, to the extent they address security screenings or bag inspections, instructed employees to remain clocked in until those checks were completed. *See* Johansen Decl., Ex. B at 29; Ex. E at GAC 000614; Ex. H.

***iii. Other Evidence***

In light of the facially compliant nature of Defendant's policies, the Court considers whether Plaintiff has sufficiently demonstrated that questions common to the proposed Meal Break Class predominate over individualized questions of liability.

Plaintiff contends that the proposed Meal Break Class presents common questions concerning whether Defendant's timekeeping, meal-break, and loss-prevention policies: (1) caused employees to undergo security screenings off the clock when leaving for meal periods; (2) discouraged employees from leaving the premises during meal periods; (3) resulted in meal periods lasting fewer than 30 minutes; and (4) gave rise to meal-period violations for which Defendant failed to pay premiums. *See* ECF No. 66-1 at 20.

But the relevant inquiry is not merely whether Plaintiff can formulate common questions; it is whether those questions are susceptible to common answers that predominate over individualized inquiries. *See Wal-Mart*, 564 U.S. at 350 ("A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc."); *Black Lives Matter*, 113 F.4th at 1258 ("[P]laintiffs must 'affirmatively demonstrate' by a preponderance of actual evidence that they satisfy all the Rule 23 prerequisites.").

Plaintiff asserts that these questions can be resolved through Defendant's policy documents, corporate-witness testimony, expert analysis of time and wage records, and an expert-conducted survey of putative class members. ECF No. 66-1 at 20. Here, Plaintiff's putative class member declarations do provide evidence that post-clock-out bag inspections occurred in some circumstances. Several former employees state that they were required to undergo bag inspections after clocking out for meal periods. *See*

*e.g.,* Ex. 66-6 at Ex. 1 at ¶ 23 ("[E]very day, after I clocked out but before I could leave for my meal break (if I got one that day) and at the end of my shift, I was required to wait for a security bag check before I could leave."); *see also* Ex. 3 at ¶ 19 (same); Ex. 5 at ¶ 25 (same); Ex. 7 at ¶ 24 (same).

Defendant's putative class member declarations, however, reflect different employee experiences regarding whether and when bag inspections occurred. Some declarants state that bag inspections occurred before they clocked out, while others describe brief inspections lasting seconds after clocking out. *See* 100-4, Ex. 13 at ¶ 35 ("The bag check is immediate and does not take any time to conduct at all. We clock out and all walk together and during the walk out they are looking at our bags. It's not like they sit there and rifle through our belongings—they just do a quick visual to make sure we have no merchandise in there. There is no delay in the process."); Ex. 16 at ¶ 46 ("I understand that I am required to 'punch out' *after*—not before—the bag inspection has been completed and I am ready to exit the store.") (emphasis in original); Ex. 36 at ¶ 38 ("It typically takes the manager approximately a few seconds to conduct the bag inspection."); *see also, e.g.*, Ex. 43 at ¶ 37; Ex. 54 at ¶ 41. Other employees discuss not bringing a bag on meal break and therefore not undergoing any inspection prior to taking their break. *See* 100-4, Ex. 3 at ¶ 21 ("When I leave the store during a meal break, I do not bring any bag with me and do not have to undergo a bag inspection."); Ex. 4 at ¶ 20 (same); Ex. 5 at ¶ 23 (same).

The Ninth Circuit's decision in *Miles* is instructive here. In *Miles*, although the employer maintained an undisputed bag-check policy, the Ninth Circuit affirmed the denial of class certification because the record did not show that inspections were uniformly conducted off the clock and the policy's application depended on employee-specific circumstances. 89 F.4th at 1221, 1225–26.

The Court of Appeals explained that:

> Some policies by their nature may implicate each proposed class member's personal preferences, practices, or proclivities, casting

> doubt on the viability of class treatment. [Defendant]'s bag check policy is a prime example. For example, not all employees underwent a bag check because not every employee brought a bag to work. [Defendant] presumably has no record of which employees brought a bag or on what days. A court would thus likely have to engage in highly individualized analysis of each proposed class member to see if he or she brought a bag to work, and if so, on what days. Such a fact-intensive inquiry into each class member's conduct and practice would mean that individual issues would overwhelm common ones.

*Id.* at 1225–26 (internal citation omitted). As such, the Court of Appeals concluded that these types of "individualized questions would have to be resolved through a series of mini-trials, undermining the efficiency and economy that Rule 23 was designed to promote." *Id.* at 1226 (internal quotation marks omitted); *see also Heredia v. Eddie Bauer LLC,* No. 16-CV-06236-BLF, 2020 WL 127489, at *5 (N.D. Cal. Jan. 10, 2020) (decertifying class based on "off the clock" exit inspections of employee personal belongings where the record evidence demonstrated that "employees' experience with exit inspections varied significantly"); *Nevarez v. Costco Wholesale Corp.,* No. 2:19-cv-03454-SVW-SK, 2019 WL 7421960, at *8 (C.D. Cal. Dec. 26, 2019) (denying certification of a meal-period class based on bag checks because adjudicating liability would "require individualized inquiry into the implementation of 'bag check' policies at each warehouse location" and the Court "would have to engage in substantial warehouse-by-warehouse individualized inquiry to determine whether the implementation of 'bag check' procedures at that warehouse likely deterred employees from taking complete meal periods").

A similar problem exists here. Although Plaintiff's declarations support that some employees underwent bag inspections after clocking out for meal periods, the record does not provide a classwide means of determining which employees did so, on which occasions, or whether an inspection interfered with a compliant meal period. Plaintiff's proposed survey does not overcome this individualized-proof problem. Even assuming the survey is reliable, it would, at most, address the individualized questions by simply

posing them to a sample of putative class members. *See* Scott Decl. ¶¶ 30–48, 83. Plaintiff does not explain how that approach demonstrates that common questions predominate over individualized ones.

For these reasons, Plaintiff has not demonstrated that questions common to the proposed Meal Break Class predominate over individualized questions of liability. The Court therefore **DENIES** certification of the proposed Meal Break Class.

***e. Business Expense Class***

Finally, the Court turns to Plaintiff's proposed Business Expense Class. The Business Expense Class is predicated on Plaintiff's claim that Defendant required its employees to use personal cell phones for work purposes without reimbursing them. ECF No. 66-1 at 20–23. Defendant contends that employees were either issued company smartphones or provided access to shared company devices and that determining whether any employee nevertheless incurred a necessary, unreimbursed expense would require individualized inquiries. *See* ECF No. 100 at 28–30.

***i. Elements***

Under California law, "[a]n employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties." Cal. Lab. Code § 2802 (a). "The purpose of this statute is to prevent employers from passing their operating expenses on to their employees." *Cochran v. Schwan's Home Serv., Inc.*, 228 Cal. App. 4th 1137, 1144 (2014) (internal quotation marks omitted). "If an employee is required to make work-related calls on a personal cell phone, then he or she is incurring an expense for purposes of section 2802." *Id.* "To show liability under section 2802, an employee need only show that he or she was required to use a personal cell phone to make work-related calls, and he or she was not reimbursed." *Id.* at 1145.

///

///

///

### *ii. Policies*

The Court next examines Defendant's written policies governing reimbursement for personal cell-phone use. The two versions of Defendant's "Business Travel and Business Expenses Handbook" in effect during the putative class period provide:

> **<u>Smartphone</u>**
> Some positions are provided with a Company smartphone. Only positions with an employment classification of "Exempt" may be provided with a smartphone, unless otherwise approved by the Human Resources Department.
>
> If a Company smartphone is provided, all business calls must be made on the smartphone.
>
> **<u>Business Phone Calls on Personal Phones</u>**
> Business phone calls made from home phones or personal smartphones are reimbursable **<u>only if</u>** the associate does not have a Company provided smartphone. Associates should limit business calls made this way according to the relative business need. A picture of the bill must be provided with the Expense Report.

Johansen Decl., Ex. I at GAC003464; Ex. J at 16. The record evidence indicates employees who did not receive company smartphones had access to shared company devices. Johansen Decl. at ¶ 37. Employees were expected to only use company smartphones and mobile devices for business-related purposes. *Id.* at ¶ 38. And in the event that employee did use their personal cell phone, they could request reimbursement. *Id.*[3]

///

///

---

[3] Defendant's corporate designee, however, testified that she did not know anyone who had been reimbursed. *See* Grant Decl., Ex. B at 328:20–329:2 ("Q. As far as you know, have any employees ever been reimbursed for using their cell phones to communicate with clients? A. Not to my knowledge because it wasn't brought to our attention that anybody was using their personal cell phone.").

Taken at face value, the record evidence indicates Defendant provided employees with either company equipment or a mechanism for obtaining reimbursement for using personal cellular phones.

***iii. Other Evidence***

The Court next considers whether Plaintiff has sufficiently demonstrated that common questions concerning Defendant's liability for allegedly requiring employees to use personal cellular phones without reimbursement predominate over individualized inquiries.

Plaintiff argues that Defendant should have known employees used personal cell phones for work because the 2015 and 2024 Associate Handbooks restricted cellular-phone use during working time to business purposes. *See* ECF No. 106 at 11. The cited provisions, however, merely regulate personal phone use during working hours; they do not, without more, indicate that Defendant endorsed or expected employees to use their personal phones for business communications. Grant Decl., Ex. D at 13; Ex. E at 17–19.

Plaintiff's putative class-member declarations provide evidence that some employees used personal cell phones for work-related purposes without reimbursement. *See e.g.*, ECF No. 66-6, Ex. 1 at ¶ 17 ("I have regularly had to use my personal cell phone to send and receive phone text messages in connection with my work for Giorgio Armani. Giorgio Armani did not offer me a company issued phone for these purposes and did not reimburse me for the use of my personal cell phone or data plan."); Ex. 2 at ¶ 23 ("I have sometimes had to use my personal cell phone to send and receive phone calls and text messages in connection with my work for Giorgio Armani."); Ex. 3 at ¶ 15 ("I have frequently had to use my personal cell phone to send and receive phone calls and text messages, with clients and with coworkers to coordinate bulk item purchases for certain clients, in connection with my work for Giorgio Armani."); Ex. 9 at ¶ 24 ("I had to use my personal cell phone to send and receive phone calls and text messages in connection with my work for Giorgio Armani.").

///

Nevertheless, Defendant's employee declarations show the opposite. *See e.g.*, ECF No. 100-4 at Ex. 1 at ¶ 25 ("I do not use my personal cell phone for work purposes. I do not contact any customers via phone or email during or outside of work hours."); Ex. 2 at ¶ 22 ("I do not use my personal cell phone for work purposes."); Ex. 3 at ¶¶ 24–25 ("GAC provided me with a cell phone to use for work purposes. GAC provides devices in the store including a cell phone that other employees and I can use for work purposes including to email or send text messages to customers. I understand I am not supposed to use my personal cell phone for work purposes. If I ever used my personal cell phone for work purposes, I chose to use it on my own and did so without my manager's knowledge.").

These competing accounts indicate that liability would turn on employee-specific questions, including whether a company device was available, whether and why the employee used a personal phone, and whether the employee sought or received reimbursement. For these reasons, "several district courts have denied class certification for personal phone use under § 2802(a) on grounds of either commonality or predominance." *Ayala v. Tapestry, Inc.*, No. 24-CV-1052-BAS-BJW, 2026 WL 350767, at *4 (S.D. Cal. Feb. 6, 2026); *see also Moore v. Saia Motor Freight Line, LLC*, No. 2:24-CV-03156-FLA (EX), 2026 WL 1196095, at *3 (C.D. Cal. Mar. 31, 2026) ("Plaintiff's theory of liability is insufficient to establish commonality or predominance because Defendant's alleged failure to reimburse employees for cell phone usage at work cannot be determined on a class-wide basis and requires individualized inquiries into the necessity and reasonableness of each class member's cell phone usage."); *Hale v. Brinker Int'l, Inc.,* 765 F. Supp. 3d 904, 919 (N.D. Cal. 2025) (denying certification of a proposed class based on employees' use of personal cell phones to arrange schedule changes because the plaintiffs failed to identify a uniform policy or practice requiring such use, and it was therefore "likely that [defendant]'s liability—to the extent there is liability—would depend on the actions of individual managers and the choices of individual employees."); *Pavloff v. Cardinal Logistics Mgmt. Corp.*, No. CV 20-00363

PA (KKX), 2020 WL 6821072, at *9 (C.D. Cal. Oct. 7, 2020) ("Plaintiffs do not, however, provide any evidence of a written policy or set of facts that clearly required or compelled class members to use their personal cell phones. Without this evidence, the 'necessity' of utilizing one's own phone for work purposes will vary by individual[.]") (internal quotation marks omitted); *Chris Pyara v. Sysco Corp.*, No. 215CV01208JAMKJN, 2017 WL 928715, at *2 (E.D. Cal. Mar. 9, 2017) (holding Plaintiff's claim class members that were owed reimbursement for expenses incurred using personal cell phones was "not well suited to class disposition without evidence of a policy or set of facts that clearly required or compelled the class members to use their personal phones").

Plaintiff's proposed survey does not alter this analysis. As the Court already noted above, even assuming its reliability, the survey would, at most, aggregate employees' individual accounts of personal-phone use. Plaintiff does not explain how those responses would resolve the employee-specific liability questions identified above. The Court therefore **DENIES** certification of the proposed Business Reimbursement class.[4]

Moreover, because Plaintiff's proposed subclasses are derivative of their three primary classes, and Plaintiff identifies no independent basis for their certification, the Court likewise **DENIES** certification of these subclasses.

---

[4] In light of the Court's conclusions that Plaintiff has not established commonality or predominance, the Court declines to address the remaining Rule 23 requirements. *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1071 n.3 (9th Cir. 2014) (declining to reach the question of whether Rule 23(a) was satisfied after holding it was not an abuse of discretion for the court to conclude plaintiff's proposed classes did not meet the requirements of Rule 23(b)(3)); *Effinger v. Ancient Organics LLC*, No. 22-CV-03596-AMO, 2025 WL 1489710, at *3 (N.D. Cal. May 23, 2025) (declining to reach typicality where plaintiff's showing of numerosity, commonality, and adequacy were deficient); *Davis v. Chase Bank U.S.A., N.A.*, No. CV 06-04804 DDP PJWX, 2013 WL 169868, at *6 (C.D. Cal. Jan. 16, 2013) ("Having determined that Plaintiff cannot satisfy the typicality or predominance of fact requirements under Rule 23, the court does not reach the remaining class certification factors.").

## IV. CONCLUSION

For the reasons set forth above, the Court **DENIES** Defendant's motion to strike [ECF No. 60], **DENIES** Plaintiff's motion for class certification [ECF No. 66], and **OVERRULES** or **SUSTAINS** the Parties' evidentiary objections as set forth above.

**IT IS SO ORDERED.**

Dated: August 19, 2026

Hon. Robert S. Huie
United States District Judge